BUNN, Appellant, v. STUART et al.

Division One, July 1, 1904.

1. **CONVEYANCES: Delivery of Deeds: Agreement to Return.** Deeds without consideration, made to grandchildren, and delivered to them under a distinct understanding that they were not to be recorded and were to be returned at any time thereafter when the maker should call for them, were never delivered.

2. ———: ———: **Purpose of Parting With Possession.** A deed may be deposited with the grantee and handed to him for any purpose other than as the deed of the grantor or as an effective instrument between them, without in any wise becoming operative as a deed.

3. ———: ———: **Agreement to Return: Fraudulent Purpose.** The owner of land, being old, had made several wills by which he gave the land in suit to his grandchildren, the defendants. But becoming dissatisfied with the wills he made the deeds in suit, intending to retain them in his possession and under his control until such time thereafter as he should see proper to deliver them. Some nine months thereafter he married, and unhappy differences arising between him and his wife, they separated and a suit for divorce was brought, and during its pendency the deeds were placed in the hands of defendants with the express understanding and agreement between him and them that they were not to be recorded, but were to be held by them for him, and to be returned to him whenever thereafter their return should be demanded. Afterwards, he and his wife were reconciled to each other, and he demanded their return, but they had been recorded. *Held,* first, that there was no delivery of the deeds; second, that as the deeds were not intended to be delivered, and were not so delivered as to pass title, no injury to the marital rights of plaintiff's

wife could possibly have been accomplished by what he did, and, therefore, a decree setting them aside could not be denied on the ground that he and the grantees were *in pari delicto* in an intended wrong on the wife's marital rights.

4. ——: ——: **Wife's Dower.** Deeds made by the owner of land before marriage and not delivered until after marriage, whether the delivery then is absolute or qualified, can not impair the marital rights of the wife.

Appeal from Shelby Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

REVERSED AND REMANDED (*with directions*).

*V. L. Drain* for appellant.

(1) There was no delivery of the deeds to respondents. The testimony of appellant and of his son Joseph Bunn is not contradicted as to the agreement to return the papers when called for by the grantor. It is but the restatement of an oft-affirmed proposition to say that the appellant, having never parted with the control or dominion over the papers, and respondents having received them merely as custodians subject to the will of the grantor, no rights were acquired thereby, and no title was vested in respondents by reason of the manual possession thereof. Vanstone v. Godwin, 42 Mo. App. 39; Huey v. Huey, 65 Mo. 694; Miller v. Lullman, 81 Mo. 311; Tobin v. Bass, 85 Mo. 654; Sneathen v. Sneathen, 104 Mo. 201; Tyler v. Hall, 106 Mo. 313; Hall v. Hall, 107 Mo. 101; Mudd v. Dillon, 166 Mo. 110; McNear v. Williamson, 166 Mo. 358; 9 Am. and Eng. Ency. of Law (2 Ed.), 153, 161. (2) Before the door of justice can be sealed against a supplicant it must be shown that he was "equal in guilt" (*in pari delicto*) as to the wrong against which relief is sought. To be equal in guilt the parties must necessarily be equal in capacity, and equal in the circumstance of choice; they must likewise participate equally in the wrong complained of. When such a case is presented the court will refuse its protec-

tion and leave the parties as they have placed them-
selves. It is vastly different, however, where the par-
ties have entered into a questionable plan as to a certain
thing, but where one of the participants, using the con-
fidence thus unworthily bestowed, betrays the other, and
by reason of his betrayal secures to himself an advan-
tage far beyond the scope of the original transaction.
In such a case, while the original guilt of the complain-
ant should not be sanctioned, the greater wrong of the
betrayer should be punished, and the fruits of his in-
iquity should be taken away. It is clearly shown by
the evidence that respondents secured possession of the
deeds under the promise related in the evidence of ap-
pellant, and that these conveyances were voluntary so
far as consideration is concerned. The record of the
instruments, retained now under claim of title, if sus-
tained, will result in the loss of that homestead which
should serve as a shelter and support during the de-
clining years of his life. It is the peculiar province of
a court of equity to give relief in such cases. Bispham's
Equity (4 Ed.), 61; 1 Story, Equity, sec. 308; Poston
v. Balch, 69 Mo. 115; Holliway v. Holliway, 77 Mo. 392;
Armstrong v. Logan, 115 Mo. 465; Martin v. Martin, 46
S. E. 120.

*B. R. Dysart* and *G. W. Humphrey* for respondents.

(1) The deeds having been voluntarily executed
and acknowledged and conveying land formerly willed
by appellant to the mother of respondents, with her con-
sent, and the announcement made by the appellant to all
of the family and the public that the land belonged to
respondents, constitutes a good delivery to minors, al-
though the deeds were placed in a bank where grantor
had access to them and when, eight months after their
execution, they were handed to the minor grantees, cer-
tainly establishes not only a presumptive, but a positive
delivery, and there is no testimony to justify a court of

equity to declare otherwise. Tobin v. Bass, 85 Mo. 654; Standiford v. Standiford, 97 Mo. 231; Sneathen v. Sneathen, 104 Mo. 201; Hall v. Hall, 107 Mo. 101; Crowder v. Searcy, 103 Mo. 97; Hamilton v. Armstrong, 120 Mo. 624; Rumsey v. Otis, 133 Mo. 95; Appleman v. Appleman, 140 Mo. 309; Kingman & Co. v. Cornell-Tebbets Co., 150 Mo. 312. (2) Admitting a delivery of the deeds, there is certainly nothing in testimony to justify appellant's contention that a court of equity should grant him aid, notwithstanding his fraudulent intent and purpose, in order to prevent a greater wrong. We can find only two cases decided by this court, where fraud was an element, in which such relief was given: Poston v. Balch, 69 Mo. 115, and Holliway v. Holliway, 77 Mo. 392. None of the elements which justified the decree in either of these cases can be found in the case at bar. The most recent discussion of this doctrine is found in the case of McNear v. Williamson, 166 Mo. 358, where such relief was refused, although, it seems to us, the facts were much stronger than in this case. (2) The general doctrine that equity will not aid a party in recovering property who disposed of it to avoid real or supposed obligations and with fraudulent intent, is so well established that we need not cite any authority in its support. (3) Appellant's contention that the deeds were in no event to be recorded can not affect the rights of the parties hereto. The record of a deed is to impart notice to the public, but between the parties it is as binding unrecorded as recorded. R. S. 1899, secs. 924 and 925.

BRACE, P. J.—This is an appeal from a judgment of the circuit court of Shelby county, dismissing plaintiff's bill in equity, which is as follows:

"Benjamin Bunn and Nettie Bunn, his wife, plaintiffs, v. William Stewart and Benjamin Stewart, defendants.

"Plaintiffs state that they are husband and wife

and that they were married on the twentieth day of October, 1899.

"That prior to said marriage, to-wit, on February 13, 1899, the plaintiff Benjamin Bunn, having in view the future disposition of his real estate, made and executed two warranty deeds of real estate of which he was seized, one to William Stewart, conveying by its terms the west one-half of the west one-half of section fifteen, township fifty-seven, range twelve, containing one hundred and sixty acres more or less; the other to Benjamin Stewart, conveying by its terms the east one-half of the west one-half of section fifteen, township fifty-seven, range twelve, in said county and State, containing one hundred and sixty acres more or less; both of said deeds being acknowledged before Marvin Whitby, a justice of the peace in and for said county on said date.

"That both of said deeds were made without any consideration whatever moving from the grantees therein named, and that it was the intention of said grantor to hold said deeds in his possession, with others that he had then and there made to his children, and not to deliver them until such time and under such circumstances as he might see fit in the distribution of his estate, and that said deeds remained in his possession and under his control, and that he never at any time parted with his dominion or control over the same.

"Plaintiffs further say that after the marriage as above set forth, to-wit, about December, 1900, unhappy differences arose between them, and that a separation ensued; that their property rights were in dispute between them and that while they were separated as aforesaid, to-wit, on or about the twelfth day of January, 1901, defendants, in accordance with a prearranged plan between them, came to plaintiff, Benjamin Bunn, and requested that these deeds above described be delivered to them to hold and keep for said plaintiff, pending and during the dispute as to the property and marital rights

as aforesaid; and that said defendants stated to said plaintiff that they would assist him thereby in preventing said Nettie Bunn from securing her rights in the property of said Benjamin Bunn in the dispute in which they were then involved.

"That plaintiff Benjamin Bunn was and is a man of advanced age and feeble health, and was at the time beset with domestic and business difficulties whereby his mental condition was impaired, and that by reason of said promises and inducements, so made as aforesaid, the defendants secured from said Benjamin Bunn the deeds above described, but it was then and there expressly and mutually agreed by and between said Benjamin Bunn and the said defendants, that said deeds should be returned to the grantor whenever he should demand same, and that in no event should they be placed of record in the recorder's office of said county unless the consent of said plaintiff be had thereto, and that defendants then and there promised plaintiff that they would merely hold said deeds in their possession without record, and subject to his recall whenever he should demand same.

"Plaintiffs further say that said defendants, after securing said deeds as aforesaid, and without regard to their promise so made to plaintiff, but with conspiracy, deceit and wrong, caused said deeds to be placed of record in the recorder's office of said Shelby county, on the eighteenth day of January, 1901, and that same are now recorded in the records of said county in book sixty-seven, said deed to William Stuart at page seventeen, and said deed to Benjamin Stuart at page sixteen of said book.

"Plaintiffs further say that on the — day of March, 1901, they adjusted their marital differences and resumed the relation of husband and wife, and that plaintiff Benjamin Bunn demanded the return of said deeds, when he learned that they had been recorded as aforesaid; that defendants have refused to return said deeds

and have refused to make a conveyance to him so as to vest the record title in said plaintiffs; that the record of said deeds are a cloud on plaintiff's title to said real estate; that the record of said deeds as they now appear are a bar to the dower rights of said Nettie Bunn, and that said deeds and the record thereof are a fraud on these plaintiffs.

"Wherefore plaintiffs pray that said deeds be cancelled and adjudged null and void by the court, and the record title thereto be divested from defendants and vested in plaintiff Benjamin Bunn as it was prior to the record of said deeds, and for such other decrees and judgments as to the court may seem just and proper."

Issue was joined on all the material allegations of the petition by answer, and at the beginning of the trial the defendants objected to the introduction of any evidence in support of the petition for the reason that the same did not state facts sufficient to constitute a cause of action. This objection was overruled and exceptions saved.

At the close of plaintiffs' evidence, the plaintiffs dismissed the cause as to Nettie Bunn, and the action proceeded in the name of Benjamin Bunn as sole plaintiff, and at the close of all the evidence was submitted to the court, the bill dismissed, and judgment for costs rendered against the said plaintiff, from which he appeals.

The salient facts of the case disclosed by the evidence, briefly stated, are as follows: The deeds in question were signed and acknowledged by the said Benjamin Bunn on the thirteenth of February, 1899. He was then about 70 years of age. He had been twice married. His first wife had died, and from his second wife he had been divorced. The defendants, grantees in said deeds, aged respectively 18 and 20 years at the date of the trial, are his grandchildren, being the sons of his only daughter and child by his first wife. The evidence tends to prove that prior to the date aforesaid the plain-

Bunn v. Stuart.

tiff had executed wills, disposing of his property at his death, in which he had devised the lands described in these deeds, which constituted his homestead, to his daughter, the mother of these defendants. But becoming dissatisfied with this disposition of these lands, and with that mode of disposing of his property, he concluded to make disposition thereof by deeds, to be retained in his own possession and control until such time thereafter as he should see proper to deliver them. That in pursuance of such purpose he signed and acknowledged these and some other deeds to other lands to his children by his second wife, all of which he retained in his own possession. That afterwards, on the twentieth of October, 1899, the plaintiff was married to the said Nettie, his third wife, who was a comparatively young woman, aged about 32 years. That some two or three months after their marriage, they quarreled, separated, and a divorce suit ensued, during the pendency of which the deeds in question were placed in the hands of the defendants by the said Benjamin Bunn, with the express understanding and agreement between him and them, that the deeds were not to be recorded, but were to be held by them for him, and to be returned to him whenever thereafter their return should be demanded, and it seems that the other deeds to his children were about the same time delivered to them, under a like agreement. Afterwards, the trouble between himself and his wife having been amicably settled, and their domestic relations restored, he demanded the return of the deeds which had thus been delivered to his children and grandchildren. Those delivered to his children were returned to him, but he was informed by the father of the defendants that the deeds to them had been placed upon record and would not be returned, and having ascertained that such was the fact, he instituted this suit.

Without going further into detail, it is sufficient to say that the other material allegations of the petition were sustained by the evidence. For the defendants, it

is contended that the delivery of the deeds by the plaintiff to them under the circumstances so alleged and proven, constituted a good delivery of the deeds in law so as to pass title to the defendants, and in support of this proposition we are cited to cases in which it has been held that acceptance by a minor of a deed which is beneficial to him will be presumed and delivery of such deed by the grantor will be presumed where he voluntarily signs, acknowledges the same and voluntarily puts it to record. But these cases do not meet the exigencies of this contention. These deeds were not voluntarily put to record by the plaintiff, but in direct violation of his intention and directions. The question here is not as to the acceptance by the defendants, but as to the delivery by the plaintiff, and as to both, there is no place for presumption, as the character of the so-called delivery is shown by positive and direct evidence, and the only question is, whether as so proven, it comes up to the measure required to constitute a good delivery in law.

For a standard by which to determine this question, we need go no further than some of the cases cited by counsel for the defendants. In the most recent of these cases, McNear v. Williamson, 166 Mo. l. c. 367, it is said: "The act must have been with the intent on the part of the grantor to divest himself of title, and it must have been accepted by the grantee with the intent to take the title as indicated in the deed. These two acts are essential to complete delivery of the deed. [Tyler v. Hall, 106 Mo. 313; Hall v. Hall, 107 Mo. 101; Tobin v. Bass, 85 Mo. 654; Sneathen v. Sneathen, 104 Mo. 201; 9 Am. and Eng. Ency. of Law (2 Ed.), 153-161.]"

In another of these cases, Hall v. Hall, 107 Mo. l. c. 107, it is said: "To operate as a complete and effectual conveyance of land, a delivery of the deed, actual or constructive, by the grantor and an acceptance by the grantee, or by some one for him, are essential requisites. These are the final and crowning acts in the

conveyance, without which all other formalities are ineffectual. The grantor must part with the deed and all right of dominion over it, intending that it shall operate as a conveyance, and the grantee must accept it. [Standiford v. Standiford, 97 Mo. 238; Huey v. Huey, 65 Mo. 689; Taylor v. Davis, 72 Mo. 291; 2 Greenleaf on Evidence, sec. 297; Tyler v. Hall, 106 Mo. 313.]" And in another recent case, Mudd v. Dillon, 166 Mo. l. c. 119, it is said: "There must be a time when the grantor parts with his dominion over the deed, else it can never be delivered. So long as it is in the hands of a depositary, subject to be recalled by the grantor at any time, the grantee has no right to it, and can acquire none." And as was said by GROVER, J., in Ford v. James, 2 Abb. N. Y. App. 159, "A deed may be deposited with the grantee or handed to him for any purpose other than as the deed of the grantor, or as an effective instrument between the parties, without becoming at all operative as a deed." [1 Devlin on Deeds, sec. 271.] So in this case, these deeds handed by the plaintiff to the defendants to be held by them, subject to his order, and to be returned to him whenever called for, did not and could not have become operative to convey title to defendants and they could not properly have been so held on the pleadings and the evidence.

It does not appear upon what specific ground the plaintiff's bill was dismissed, but from the course of the examination, largely conducted by the court, it seems that it was upon the theory that by the so-called delivery of these deeds to the defendants, an injury to the marital rights of the plaintiff's wife was intended; that in this intended wrong to the wife, plaintiff and defendants were in pari delicto, and such being the case, equitable relief ought not to be granted. But if these deeds were not intended to be, and in fact were not so delivered, as to pass title, no injury to the wife's marital right could possibly have been accomplished thereby

and this was the extent of the plaintiff's offense. He did no wrong act. This property was his. He had the right to execute these deeds, to hold them as he did, and to deliver them thereafter whenever he pleased, or not at all if he should so choose. They could not possibly take effect as conveyances until they were delivered. They were not delivered in any manner prior to the marriage. The wife's rights in her husband's property were fixed by the marriage, and, thereafter, no delivery, whether qualified or absolute, could have impaired her marital rights therein. The only wrong perpetrated on anybody in this whole transaction was the putting of these deeds on record, by the defendants, in breach of the confidence reposed in them by their grandfather. In this wrong to the plaintiff, and to his wife as well, who had right not only to dower and homestead at his death, but to share with him the enjoyment of his homestead as long as he lived, the plaintiff did not participate. By putting these deeds on record the defendants were not only guilty of a breach of the confidence reposed in them by their grandfather, but they thereby cast a cloud upon his title which a court of equity alone can remove, and to refuse to do so in this case would, in our opinion, be a misapplication of the principle *"in pari delicto potior est conditio defendentis et possidentis."*

Therefore, the judgment of the circuit court will be reversed and the cause remanded with directions to enter a decree in favor of the plaintiff in accordance with the prayer of the petition.

All concur.