DAVIDSON v. POAGUE et al.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1920. Rehearing Denied February 20, 1920.)

No. 2716.

1. EVIDENCE ⬳414—DATE BEING ONLY PRESUMPTIVE EVIDENCE, TIME OF EXECUTION OF CONTRACT MAY BE SHOWN BY PAROL.

The date written at the beginning of a contract is only presumptive evidence that it was executed on that day, and testimony as to when it was actually signed and delivered is admissible.

2. BROKERS ⬳40—ACCEPTANCE OF CONTRACT NEGOTIATED BY BROKERS AGREEMENT TO PAY COMMISSION.

Where a contract for exchange of property, containing an agreement to pay brokers commission as previously agreed upon, was negotiated and prepared by the brokers, dated and signed by one party, and sent by the brokers to the other party, with a letter stating that, if the offer was accepted, he would be required to pay a stated commission, the contract speaks from the time it was signed by him, and not from its date, and in the absence of any other agreement for commissions his acceptance of that proposed is presumed.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by Charles M. Poague and Arthur W. Tobias, surviving partners of the firm composed of McKey, Poague, and Tobias, against Watson P. Davidson. Judgment for plaintiffs, and defendant brings error. Affirmed.

Samuel B. King, of Chicago, Ill., counsel for plaintiff in error.
B. F. Langworthy, of Chicago Ill., for defendants in error.

Before BAKER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Writ of error from the District Court of the United States for the Eastern Division of the Northern District of Illinois, to reverse a judgment upon a verdict rendered by a jury in that court for the sum of $5,000 against Watson P. Davidson, plaintiff in error, and in favor of Charles M. Poague and Ar-

thur W. Tobias, surviving partners of the firm formerly composed of McKey, Poague, and Tobias. This suit was removed from the municipal court of the city of Chicago by Davidson (plaintiff in error), defendant below, and who is hereinafter so called. Defendants in error are hereinafter called plaintiffs.

The pleadings in this case consist of a statement of claim and an affidavit of defense. The gist of the claim is that, acting as agent for defendant, plaintiffs, under the terms of a written contract, effected the exchange of properties between the defendant and one Albee, and thereby earned a commission of $5,000 from defendant. It is also set out that on or about July 22, 1914, plaintiffs procured Albee to sign the proposition, bearing that date, offering to make the exchange, and in which was the following clause:

"It is further mutually agreed that brokerage fees or commissions shall be paid to McKey & Poague * * * by the respective parties hereto, as heretofore agreed by them."

That on the 24th day of July, 1914, defendant was told by letter of that offer, and that if the offer was accepted by him he would be required to pay a commission of 2½ per cent. on the valuation of $200,000 for defendant's property. That negotiations continued until the defendant, on August 22d, finally signed the proposition, which was thereafter consummated by making the exchange.

In his affidavit of defense, defendant did not deny the signing of the contract by Albee, and later by himself, as set out in the claim; admitted receiving the letter of July 24th, stating that plaintiff would insist upon a commission, but says, "The letter did not state from whom the plaintiff expected to collect such commission." The affidavit denies any agreement to pay any commission, but avers that after July 24th there was an express agreement that plaintiffs should have no commissions, unless they got defendant more land, which it is averred they did not do. The affidavit finally concludes with the averment of an agreement that defendant was to pay no commission whatever.

Defendant, for reversal, states and argues several propositions.

[1, 2] I. "The stipulation in the written contract of exchange that commissions shall be paid to defendants in error, as heretofore agreed, excludes all agreements for commissions made after the date borne by the contract." Complaint is further made as to the rulings of the court in conflict with that proposition.

If that contention is sound, then there never could be any recovery, because up to the date of the proposition the question of commissions had not then been even considered. The record shows that on July 24th plaintiffs sent to defendant, by letter, the proposition, signed by Albee, which by its terms gave defendant 15 days for acceptance. Thirty days after the date of that proposition, and 15 days after it had ceased to be even a proposition, defendant concluded to make it a contract by signing it on August 22, 1914. The letter stated the amount of commission which defendant would have to pay in case he accepted the proposition.

Defendant's whole argument is based upon the theory that the

date written at the beginning of the proposition for exchange, made a month before defendant made it a contract by signing it, cannot be changed nor disregarded. It has been so long and so well known that the date of an instrument is only presumptive evidence that it was executed on that day, and that testimony as to when it was actually signed and delivered is admissible, that we will only cite Abrams v. Pomeroy, 13 Ill. 137, cited by defendant. There was no error in the ruling of the court that the contract must be held to speak on the question of commissions as of the date upon which it was signed by the defendant.

II. The second contention is twofold:

(a) "That there never was a meeting of the minds of the parties as to the amount to be paid for commissions."

(b) "The pleadings in the case base the right of recovery upon an express contract."

The question as to whether the minds of the parties met on the matter of commissions was submitted to the jury by the court, under full and accurate instructions. Among the instructions given was one asked by the defendant, in which the court submitted the question of the effect of defendant's claim—that before he parted with the contract, and when the deal was closed at the office of Chicago Title & Trust Company, he had an understanding that there were to be no commissions. It was claimed in defendant's affidavit of defense that there was such an agreement. Whether that was true or not was one of the questions properly submitted to the jury.

There is clearly no allegation limiting plaintiff's right of recovery to a written contract. The statement merely is that the exchange was made under a written contract and that it contained a certain clause about commissions. The very language of that clause indicates that the terms of the agreement about commissions were outside of the contract. The letter of defendant of July 24th showed that it was to be made the basis of an agreement for commissions. By denying it, the affidavit of defense put in issue the question as to whether there was an acceptance of the proposition stated in the letter of July 24th.

III. It is further contended that—

"The evidence * * * is * * * to the effect that the only contract to pay commissions was to pay a commission in land and that only in case Albee should put in more land than he did put in."

It seems not worth while to discuss that contention, because plaintiffs make no such claim in this case, and the affidavit of defense says that, while there was such a proposition made by defendant, yet that nothing came of it. Defendant seems to have confused himself by what he himself injected into this case about a conditional land commission, and the confusion has gone to such an extent that he now seems to believe that the plaintiffs are trying to recover on a contract for land commission.

IV. The fourth contention is that plaintiffs—

"are barred from recovery by reason of their default in their undertaking to obtain for defendant rents of the Chicago flat building for three months."

The affidavit contained no such defense. Letters between the parties, both before and after the contract was signed by the defendant, and after the date upon which he said the arrangement about the rents was made, show conclusively that there was no such contract. In addition to this, the court, on the specific request of the defendant, in an instruction to which there was no exception, submitted that exact question to the jury.

V. It is contended that the—

"rulings of the District Court upon admitting evidence of the rate of usual commission to real estate brokers and in refusing to strike out testimony which got into the record on that point is reversible error."

This contention relates to the admission of the letter of July 24, 1914, written by the plaintiffs to the defendant, in which plaintiffs told the defendant the situation with reference to the exchange of lands up to that time and the terms of the proposition which had been put into writing and signed by Albee, and told defendant what commissions they would insist on. The part of that letter referring to commissions was put in issue by the affidavit of defense. The other letter was a letter of August 7th, written in the regular course of business before the transaction was closed. There was no error in the admission of either of those letters.

VI. The next objection is to the admission—

"of the letters constituting the exclusive agency which expired several months before the beginning of the transaction involved in this suit."

Those letters merely showed the relations between the, parties in connection with the defendant's property which afterwards became the subject of exchange. They could not have injured the defendant in any way. In the exception to the instruction, counsel did not object to the proposition that those letters were admissible to show the relation of the parties, but asked the court to instruct the jury to consider them for that purpose only, which the court did, to the apparent satisfaction of the defendant.

VII. The seventh contention urged is that—

"The submission to the jury, by the court's charge, of matters concerning which there was no evidence before the jury, constituted reversible error."

The objection is directed to the court's instruction:

"If you find from the evidence the parties agreed the commission should be either $5,000 in money or a certain amount of land, and then you find further that the defendant repudiated his contract, in such a case the plaintiff can sue for the money or the land, as he sees fit."

On suggestion from defendant's counsel that there was no evidence of any such agreement, the court instructed the jury as follows:

"If there is no evidence of any such agreement, of course, the jury will just forget it."

Defendant made no further exception. It does not appear that there was any way in which it could have injured the defendant. The whole land commission matter was injected into the case by the de-

fendant. It was introduced into the affidavit of merits, not as a defense, but as one of the discarded elements of the negotiation, and, if confusion grew out of it, the blame must be upon the defendant.

Whether or not defendant expressed an agreement to pay the commission demanded of him in the letter of July 24th, 1914, would be immaterial, if he accepted the benefit of plaintiffs' labors. Unless the evidence showed that there was some other agreement, acceptance would be presumed.

We are of opinion that there is no error in the record, and that the judgment should be affirmed; and it is affirmed.